Benjamin Shalleck,. J.
While the infant plaintiff and his father were guests at the defendant’s hotel in Puerto Bico on December 31, 1965, he was attacked, beaten and robbed by one or more unknown assailants after leaving the gambling casino being operated by the hotel. On that date the casualty insurance laws of Puerto Bico allowed a direct action to be brought against an insurer or against the insurer and the insured or against the insured.
This action, commenced on August 1, 1966, against both the insurer and the insured, was brought by the infant plaintiff to recover damages sustained by him by reason of the occurrence which took place on December 31,1965. However, in the interim between the date of the occurrence .on December 31, 1965 and the date of the commencement of this action on August 1, 1966, namely, on May 26, 1966, the law permitting such direct action against the insurer was aménded and became effective that date, requiring such direct actions against insurers to be brought only in Puerto Bico.
This motion by the defendant insurer seeks the dismissal of the action against it on the ground that the complaint does not state a cause of action against it, and cites the change in the Puerto Bican law as the basis for such requested action.
Attached to the moving papers is a photostatic copy of a portion of the Insurance Code of Puerto Bico; section 2003 appearing therein, provides:
“ Suits against insured, insurer.
“ (1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Bico. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.
“ (2) If the plaintiff in such an action brings suit against the insured alone, such shall not be deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain action against and recover from the insurer after securing final judgment against the insured.” (Insurance Code, § 2003, as amd. May 26, 1966, No. 21, p. 141, eff. May 26,1966.)
*460 It is the interpretation of the second sentence in subdivision (1) of section 2003 which is in dispute. This sentence constitutes the amendment of May 26, 1966 and which became effective on that date.
Prior to the amendment of May 26,1966, the Court of Appeals, in the case of Oltarsh v. Ætna Ins. Co. (15 N Y 2d 111), in considering subdivision (1) of section 2003 held that it was not against public policy to enforce the Puerto Rican statute in New York courts. The court held (pp 115-116): “By making the insurer immediately liable whenever a covered loss occurs and rendering ineffectual ‘ no action’ clauses in insurance contracts, Puerto Rico’s statute did more than simply redefine the proper parties to suits involving insurance contracts and went beyond merely providing a procedural shortcut for those injured by insured tort-feasors. Rather, the statute created a separate and distinct right of action against the insurer where no such right had previously existed and thus effected a radical change in the rights accorded injured persons. There can be no doubt, then, that such direct action legislation transcends mere procedure and, indeed, in Morton v. Maryland Cas. Co. (4 N Y 2d 488, 493, affg. in this respect 1 A D 2d 116, 120) we implicitly recognized the substantive character of the somewhat similar Louisiana direct action statute for purposes of the conflict of laws.”
In the case of Morton v. Maryland Cas. Co. (4 N Y 2d 488) plaintiff, a New York resident who suffered personal injuries in an automobile accident in Louisiana brought an action in the New York Supreme Court to recover damages. The defendant had issued in Louisiana a liability insurance policy covering the automobile in which plaintiff was a passenger when injured.
At the time of the accident, the Louisiana law afforded injured persons or their heirs, a direct action against insurers (La. Rev. Stat., tit. 22, § 655). This section of the Louisiana law provided in part: “ The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido ’ ’.
The Court of Appeals held in Morton v. Maryland Cas. Co. (pp. 493-494): “We agree with the Appellate Division that, on the face of the statute and by its wording and arrangement, the limitation whereby suits may be brought in the appropriate Louisiana parishes only is inseparable from the cause *461 of action itself (see Miller v. Commercial Std. Ins. Co., 199 La. 515). And this interpretation is strongly supported by Louisiana administrative practice. Defendant’s policy of insurance contained the conventional prohibition against direct suits, etc. Despite that policy provision, defendant as a condition precedent to doing business in Louisiana was required (La. Rev. Stat., tit. 22, § 983, subd. E) to consent to suits by persons injured in Louisiana accidents. The consent form, prepared and furnished by the Secretary of State and Insurance Commissioner of Louisiana and signed by this defendant, gives consent to direct suits in the State of Louisiana. Defendant was never asked to agree nor did it ever agree that a direct suit could be brought against it elsewhere than in Louisiana.”
It should be noted that in the Oltarsh case (supra) the limitation against direct actions in other jurisdictions did not appear in the Puerto Rican statute at that time, while in the Morton ease the limitation did appear in the statute at the time when the defendant consented to such direct actions and was ‘ ‘ inseparable from the cause of action itself,” and as a result, Morton’s cause of action arose under that limitation.
In the present case, the infant plaintiff’s cause of action arose before the amendment of May 26, 1966, and before the Puerto Rican statute contained a built-in venue provision or any clause even remotely resembling the localizing provision in the amended statute, or any other language which could possibly bo read as a limitation restricting to the courts of Puerto Rico the direct actions it authorized.
Furthermore, the Puerto Rican statute is prospective in nature, as the first sentence begins with the words “ (1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer ”. This verbiage, when read together with the amending sentence inserted in order to restrict such actions to the Puerto Rican courts, can and must be interpreted prospectively, and affects only those causes of actions which arose on or after the May 26, 1966 amendment which took effect that date.
In this case, the infant plaintiff’s cause of action is separable from the amendment limiting venue which became effective on May 26, 1966 (Morton v. Maryland Cas. Co., supra, p. 493), since a substantive right should not be taken away from an injured person after it had already accrued.
“ New York’s policy of requiring a tort-feasor to compensate his guest for injuries caused by his negligence cannot be doubted — as affected by the fact that the Legislature of this State has repeatedly refused to enact a statute denying or lim *462 iting recovery in such cases”. (Babcock v. Jackson, 12 N Y 2d 473, 482.) In that case the Court of Appeals upheld the right to bring an action in this State by an injured New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged, licensed and insured in New York, in the course of a journey which began and was to end in New York. The accident occurred in Ontario, Canada, where a statute barred a guest, solely because of his status as guest, from recovering damages for a conceded wrong. The court separated the facts and the right of action from the law of the place of the tort and held that1 * Ontario’s sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there.” (p. 482).
The amendment of May 26, 1966 did not extinguish a substantive right which accrued prior to that date. Therefore, the complaint does state a cause of action which accrued under the Puerto Rican statute as it read prior to the amendment.
The motion by the defendant Consolidated Mutual Insurance Company for an order dismissing the summons and complaint as against it is denied.